Argued and submitted May 30, affirmed August 8, 2012

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JOSHUA JOHN RITCHIE,
*Defendant-Appellant.*

Josephine County Circuit Court
09CR0633; A145184

284 P3d 1174

Daniel C. Bennett, Deputy Public Defender, argued the cause for appellant. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Ryan P. Kahn, Assistant Attorney General, argued the cause for respondent. With him on the brief were John R. Kroger, Attorney General, and Anna M. Joyce, Solicitor General.

Before Ortega, Presiding Judge, and Brewer, Judge, and Sercombe, Judge.

ORTEGA, P. J.

## ORTEGA, P. J.

Following a jury trial, defendant was convicted of two counts of burglary in the first degree, three counts of aggravated theft in the first degree, seven counts of unauthorized use of a vehicle, and two counts of felon in possession of a firearm. In his sole assignment of error, defendant contends that the trial court erred in making a preliminary determination that a photograph was admissible because the state, the proponent of the photograph, failed to sufficiently authenticate it as required by OEC 901. Although defendant objected to admission of the photograph at trial, his challenge below was based on his assertion that the late introduction of the photograph on the eve of trial constituted a discovery or due process violation that prevented him from investigating and challenging the photograph's probative value. In short, his arguments on appeal focus on the state's burden in establishing a foundation for admission of the photograph, but his arguments below focused on his own ability to challenge the photograph's evidentiary significance. Because his arguments on appeal are qualitatively different from the arguments he raised below, we conclude that defendant's assignment of error is unpreserved. Accordingly, we affirm without reaching the merits.

The pertinent facts are few and procedural in nature. The state charged defendant with a number of different crimes arising from several burglaries and thefts from a number of unrelated victims. One of the items stolen was a black pickup truck. On the eve of trial, an informant who wished to remain anonymous gave a police officer a photograph of defendant sitting in the driver's seat of a black pickup truck. The officer gave the photograph to Vorberg, the detective who was investigating the case, and the following morning Vorberg gave the photograph to the prosecutor. Immediately upon walking into court for the trial, the prosecutor gave a copy of the photograph to defendant's counsel.

Defendant raised the issue of the admissibility of the photograph at various points during the trial. Ultimately, the trial court allowed its admission based on the testimony of two authenticating witnesses—Vorberg, who identified defendant as the person in the photograph, and the owner

of the stolen truck, Hughes, who identified the truck in the photograph as his truck.

On appeal, defendant advances a number of arguments to support his challenge to the trial court's admission of the photograph without proper authentication by the state under OEC 901. That rule provides, in pertinent part:

"(1) The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that *the matter in question is what its proponent claims*.

"(2) By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of subsection (1) of this section:

"(a) Testimony by a witness *with knowledge that a matter is what it is claimed to be*."

OEC 901 (emphasis added). Defendant first highlights the legislative commentary to OEC 901, which explains that "whenever a piece of evidence is offered there must be certain minimum assurances that the evidence is what it purports to be, what it is offered as being and what its value depends upon." Legislative Commentary to OEC 901, *reprinted in* Laird C. Kirkpatrick, *Oregon Evidence* § 901.02, 875-76 (5th ed 2007). He then argues, relying on Professor Kirkpatrick's treatise on Oregon evidence, that authentication by a witness with knowledge that the photograph represents an actual event is

"particularly important in the realm of photographs because, '[w]ith modern technology, particularly digitalization, it has become easier to manipulate, distort and fabricate all forms of photographic imagery. Enlargements, filtered lenses, cropping, varied focal length, and changed lighting conditions provide opportunities for manipulation which may be detectable, if at all, only by a sophisticated viewer.' [Kirkpatrick, *Oregon Evidence* § 901.04 at 884.]"

Defendant also argues that authentication is a question of conditional relevancy under OEC 401(1) and, therefore, that the trial court must make a preliminary determination of authenticity sufficient to allow the jury to then make the final determination. Thus, according to defendant, the

threshold question before the trial court here was whether there was sufficient evidence to allow the jury to determine that the photograph at issue depicted a true event. Finally, defendant contends that the need for an answer to that threshold question is especially heightened in cases like this one where there is very minimal information regarding the origin of the evidence. In light of the "sudden appearance of a piece of damning evidence, upon the eve of trial, with no attendant information about its origin," defendant contends, the trial court should have "required adherence to a high standard of proof before [the photograph] was deemed sufficiently relevant * * * to allow it to be presented to the jury." Accordingly, defendant argues, because the state's authenticating witnesses, Vorberg and Hughes, had no knowledge that the photograph depicted the scene that it purported to, as required by OEC 901, and no other evidence was presented regarding the photograph's origins, the state failed to provide evidence establishing its authenticity.

The state's first response is that defendant did not preserve his assignment of error, and, as we shall explain, we agree.

On the second day of trial, the following colloquy regarding the admissibility of the photograph ensued. We quote the colloquy at some length because it shows the context in which defendant made the statements that he relies on here as having preserved the argument he makes on appeal:

"[DEFENSE COUNSEL]: * * * We are not suggesting that [the photograph] was sat on. We have no reason to believe that and don't believe that to be in, in character with the Detective or the DDA on the case. * * * What we're saying is, due process violation, inadvertent discovery violation. If it were advertent, we'd be asking for dismissal of the case. We're asking for this to be excluded basically on, on fair play and, and here is why. First of all, the [confidential informant], we don't understand why they get to remain anonymous in this case. Bias and motive would be very important. The person's sophistication would be at issue as to whether or not such a photo could be photo shot [sic[1]]. The copy we have is not adequate to investigate,

---

[1] We presume that counsel meant to say that the photo could be "photo-shopped."

that we do not have time to investigate the validity of the photo itself or the reasons for coming forward. I think if the citizen has information for the State and they come forward on the day of trial, they run the risk of their information not being considered. Secondly, when I showed * * * the photo to [defendant], he said, well that looks like so and so's truck. And I don't have time to find 'so and so' who[se] address and phone number * * * my client wouldn't have memorized * * *. I don't have any opportunity to investigate that reasonably. I cannot get somebody right on that as I could have even if it had been a few days before trial. This is simply untenable. * * * I think it's in the Court's sound discretion and * * * simply on the basis of due process and the fact that we've had inadequate time to deal with this in a * * * very serious case that * * * it simply should not be allowed.

"* * * * *

"[THE PROSECUTOR]: Judge, the due process analysis, there is no case law. * * * When the prosecutor is given information that is new, that has not been in law enforcement's control promptly discloses * * * there is no discovery violation. * * * [I]n this case for a statutory purpose, I'd like the Court to make a finding that based on the case law there is no discovery violation. However I do agree with [defense counsel] with regards to due process concerns. Her remedy is not the appropriate remedy of just suppressing those photos. * * * [I]f [defense counsel] needs to use Friday as the day to investigate, speak with [defendant], get information, and we take a recess and not do trial on Friday to give her the time to do that, that would be an appropriate remedy in this case, to give her the time to investigate that. Furthermore, bias, why a person came forward isn't relevant if the State's not using them as a witness. We're not calling the person. We don't need the person. WE can identify the photo from the victim and the person in the vehicle, the defendant, Detective Vorberg positively identifies that individual as the defendant."

As indicated above, the colloquy centered on defense counsel's claim of a discovery or due process violation—specifically that, in light of the sudden appearance of the photograph the day before trial, counsel did not have adequate time to hire an investigator or contact defendant's acquaintance who allegedly owned the truck in the photograph. In response to those arguments, the trial judge stated:

"I agree with [the prosecutor] that there are remedies apart from suppression of the photo that may be applicable, so [defense counsel], I just wanted to put you on notice that that might be the ultimate result, and so you should take whatever time you have during the weekend. If you need to employ an investigator, do that. If you think that more time is necessary then, then the weekend and Monday let me know. We can talk about that."

The following day, the issue of the admissibility of the photograph was again raised. The prosecutor explained that the state planned to lay the foundation for the photograph by having Hughes, the owner of the stolen truck, address whether the truck in the photograph was his and by having Vorberg identify the person in the truck as defendant. *Defense counsel made no objection to that plan.* The discussion instead turned to whether defense counsel had an adequate copy of the photograph. Defense counsel then stated, "And among my other objections to the photo are the inability to appropriately authenticate it under the circumstances with the anonymous donor."

Five days later, shortly before the state moved to offer the photograph as an exhibit, defense counsel reiterated the arguments she had raised on the second day of trial:

"Your Honor I have to rely on constitutional provisions, both federal and, and state. I've also read the case law. It appears, as far as the issue of discovery violation per se, to allow for a continuance, I don't know yet if a continuance is going to cure that. I want to say for the record that I got immediately on the issue, and attempted and managed to engage a investigator which is not always easy at the, the last moment. He has located somebody that I would have been investigating * * * had I had the normal amount of time * * *. And I do want to put on the record that this picture must be about two years old if * * * it is what it is purported to be. And, * * * I think that should be a factor in the due process argument that perhaps this has no delay on [the prosecutor's] part or the officer's part, but it should matter if someone sits on something and then offers it two years later. * * * I have no idea what this person's interest is. What this person's bias is, * * * or anything that would assist me. Even with a set over and investigating this * * * think * * * the unfair component of it is compounded by

the fact that we don't have the name of the person who gave this, we have no knowledge of why the delay was so long, how this person became aware of *** the trial, what their motivations were for, if it is what it's purported to be, sitting on it. Additionally, a photograph, especially now can be altered. We don't have time to investigate that. We don't have the resources to immediately have someone on an issue like that. The best we could do was look for an individual that my client believes may own *** the truck in question. We did contact him. I don't know if he came in to view the original photo. That's another issue. We didn't even have the piece of information that would have allowed us to properly investigate it before we pulled this fellow into this case with *** unknown results. I haven't been able to talk to him. I would like to ask [the prosecutor] if she's aware of someone coming by to see the original photo?

"* * * * *

"Needless to say the case might have been different had we had this information when it was first available to the person who under the disguise of anonymity provided it [on the] day of trial to the State. Judge, we're arguing basic fairness and asking that it be left out under these circumstances, and for finding that a set over could not cure the unfair surprise."

Shortly thereafter, the state moved to offer the photograph into evidence based on the testimony of its two witnesses. Defense counsel then objected "on the basis of foundation."

As a general rule, claims of error that were not raised before the trial court will not be considered on appeal. *State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000). To preserve a claim of error, "a party must provide the trial court with an explanation of his or her objection that is specific enough to ensure that the court can identify its alleged error with enough clarity to permit it to consider and correct the error immediately, if correction is warranted." *Id.* The rules pertaining to preservation of error also ensure that "parties are not taken by surprise, misled, or denied opportunities to meet an argument." *Davis v. O'Brien*, 320 Or 729, 737, 891 P2d 1307 (1995).

Here, defendant's objections below made no reference to the operative rule, OEC 901, which provides the

basis for his argument on appeal, nor did he reference the heightened standard of proof that he now contends applied before the photograph could be authenticated, nor did he argue that the photograph did not depict an actual event. Indeed, when the state explained its proposed method of authentication, defense counsel made no objection to that method. Moreover, the few brief instances in which defense counsel mentioned "inability to appropriately authenticate" or "altered [photograph]" occurred either in the context of a claim of a discovery or due process violation, concerns about bias and motive of the person who submitted the photograph, or the fact that defense counsel had a copy of the photograph that was inadequate to allow for further investigation—all issues relating to defendant's own ability to attack the photograph's evidentiary value—not in the context of addressing whether the state had laid a foundation sufficient to allow the trial court to make a preliminary determination of admissibility. Thus, in light of that context, defendant's generalized objection "on the basis of foundation" failed to alert the trial court and the state to the alleged error that defendant now asserts.[2] Finally, as the state contends, if defendant had raised any of his present contentions at trial, then the state would have been alerted to a possible need to modify its method of authentication so as to establish the photograph's conditional relevance. In short, the purposes of preservation have not been served in this case. Accordingly, we decline to address the merits of defendant's assignment of error.

Affirmed.

---

[2] A foundation objection can encompass a range of issues. *See, e.g., State v. Maxwell,* 172 Or App 142, 150-51, 18 P3d 438 (2001) (foundation objection was that, because the defendant's character witness' testimony was based on an isolated incident of untruthfulness, the defendant failed to lay a proper foundation for its admission); *Hansen v. Abrasive Engineering and Manufacturing,* 317 Or 378, 381-82, 856 P2d 625 (1993) (objection was that, because the defendant was not required to comply with an advisory standard of care provided by a national institute, the plaintiff failed to lay a proper foundation for the admission of any reference to that institute's advisory standards); *Evers v. Roder,* 196 Or App 758, 760, 103 P3d 680 (2004) (objection was that, because the medical expert's testimony regarding a form of pain management did not meet a foundational test for admissibility of scientific evidence, the plaintiff failed to lay a proper foundation for its admission); *State v. Cappleman,* 10 Or App 176, 179-80, 499 P2d 1372 (1972) (objection was that, because the witness at issue was not the custodian of certain records of an automobile dealership, the plaintiff failed to lay a proper foundation for their admission as "business records").