Submitted May 24, affirmed November 16, 2016

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

BRANDON LEE JENKINS,
aka Brandon L. Jenkins,
*Defendant-Appellant.*

Multnomah County Circuit Court
130952252, 140130447;
A159294 (Control), A159295

385 P3d 1209

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Zachary Lovett Mazer, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Paul L. Smith, Deputy Solicitor General, and Peenesh Shah, Assistant Attorney General, filed the brief for respondent.

Before Duncan, Presiding Judge, and DeVore, Judge, and Flynn, Judge.

### DEVORE, J.

Defendant appeals a judgment revoking his probation for violating a condition of probation prohibiting contact with P. Defendant assigns error to two rulings involving the admission of evidence. First, he contends that the trial court erred in admitting the testimony of a police officer about P's out-of-court statement identifying herself, and, second, he contends that the court erred in admitting the officer's statement about P's verbal or nonverbal assertion that text messages on her phone were from defendant. We conclude that any error in admitting a hearsay statement about P's identity was harmless and that the trial court did not err in admitting the officer's testimony because it contained no verbal or nonverbal hearsay. Therefore, we affirm.

In one of two underlying cases, defendant was convicted of robbery, theft, and trespass, and, as part of his sentence, he was placed on probation. One of the conditions of probation forbade direct or indirect contact with P. In the second case, defendant was adjudged to be in contempt of court for violation of a restraining order. The punitive sanction was a fine followed by probation. Special conditions of probation prohibited personal contact with P, any actual or attempted contact with her by telephone, mail, or electronic means, and any actual or attempted entry into an area within 150 feet of her home, place of employment, or her person.

While defendant was on probation subject to those terms, P called the police to report that defendant was in her presence, and gave a location that is near a light rail stop (*i.e.*, a Metropolitan Area Express or MAX stop). It is near her home. Two officers responded. Officer Budry spoke with P, who apparently identified herself and who said that a probation condition prohibited defendant from contacting her. Budry checked on his computer to confirm that defendant had such a probation condition. Budry contacted defendant's probation officer, who asked the officers to detain defendant for a probation violation. P then "showed [Budry] her cell phone."

At the probation violation hearing, the state sought to prove that defendant contacted P in violation of the

probation condition. The state did not call P to testify. Instead, the state called one of the officers. Budry testified to P's identity, presumably based on her self-identification. Defendant objected that the testimony was hearsay and, therefore, a violation of defendant's federal due process right to confrontation.[1] The court ruled that it would "allow the statement as to who the person is."

Thereafter, Budry testified that, at the scene, he overheard defendant identify P when telling the other officer that P "was there" when defendant arrived at that MAX stop. Budry also heard defendant say that he had not attempted to contact P and that she happened to be there when he got off at the stop.[2]

When Budry testified that P showed him her cell phone, defendant again objected. The trial court ruled, "[T]his witness can testify to what he saw and heard so I'll allow that." Budry testified that he saw text messages that "appeared to be from [defendant] to [P] asking if she was awake, asking if he could come over." Budry also testified that he saw another message that appeared to say that defendant was only 10 minutes away.

At the conclusion of the hearing, the trial court found defendant in violation of the probation conditions barring contact with P. The trial court revoked defendant's probation and imposed a 180-day incarceration concurrently in each case with two years of post-prison supervision.

On appeal, defendant first assigns error to the admission of Budry's testimony recounting P's statement identifying herself. He argues that admission of that evidence was error because "some due process protections attach to probation violation proceedings," among those protections are "'the right to confront and cross-examine adverse witnesses,' unless the government shows good cause

---

[1] As discussed later, defendant challenged the admission of hearsay evidence as a violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *See State v. Wibbens*, 238 Or App 737, 739-41, 243 P3d 790 (2010) (so treating a similar objection in a probation revocation proceeding).

[2] To the same effect, defendant would later testify at the hearing that, when he got off the MAX, "That's when I noticed, uh, [P], and, uh, walked away."

for not producing the witness," and the state did not make that showing here. (Quoting *State v. Wibbens*, 238 Or App 737, 741, 243 P3d 790 (2010) (quoting *Morrisey v. Brewer*, 408 US 471, 489, 92 S Ct 2593, 33 L Ed 2d 484 (1972)). The state responds that, even if the trial court erred, any error was harmless because other testimony identified P. Whatever the merits of defendant's objection may be, we agree with the state that any error would be harmless.

Because it is based on a federal constitutional right, we evaluate whether a due process violation is harmless by applying the federal harmless error test. *State v. Cook*, 340 Or 530, 544, 135 P3d 260 (2006). Under that test, an error is harmless "'if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt.'" *Id*. (quoting *Delaware v. Van Arsdall*, 475 US 673, 681, 106 S Ct 1431, 89 L Ed 2d 674 (1986)); *see also United States v. Verduzco*, 330 F3d 1182, 1184-85 (9th Cir 2003) (violation of due process right at revocation proceeding is subject to harmless error analysis). "In reviewing the whole record to determine whether an error was harmless, the court should consider 'the importance of the [improperly admitted] testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, * * * and, of course, the overall strength of the prosecution's case.'" *Cook*, 340 Or at 544 (quoting *Van Arsdall*, 475 US at 684) (brackets in original). The inquiry here may be reduced to a determination "whether the improperly admitted evidence, when viewed in the context of all the other properly admitted evidence, uniquely established" P's identity. *Cook*, 340 Or at 544-45.

Applying that standard, assuming without deciding that Budry's testimony about P's self-identification was erroneously admitted, we conclude, on the whole record, that the error was harmless beyond a reasonable doubt. Budry testified that, at the scene, he overheard defendant state, P "was there," when defendant had arrived at the MAX stop. Defendant's identification of P at the scene was not hearsay; it was defendant's own statement offered against him. *See* OEC 801(4)(b)(A) (a statement is not hearsay if it is

offered against a party and is that party's own statement).[3] Moreover, his defense—that P and defendant just happened to be at the MAX stop and he walked away upon seeing her—is a defense that is predicated on an admission that he identified P at the scene. Considering the record as a whole, in particular defendant's own testimony of the same fact, we conclude that any error in admitting the out-of-court statement of self-identification was harmless beyond a reasonable doubt. *Cook*, 340 Or at 550 ("[C]onsidering the cumulative nature of the inadmissible statements and the relative strength of the prosecution's case, we conclude, on the whole record, that the constitutional error was harmless beyond a reasonable doubt.").

Secondly, defendant assigns error to the admission of Budry's purported testimony about P's verbal or nonverbal assertions that there were text messages from defendant on P's phone. Generally, the Oregon Evidence Code defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." OEC 801(3). Unless an exception applies, hearsay is inadmissible in ordinary trial proceedings. OEC 802.

Strictly speaking, the hearsay rule does not apply in proceedings to revoke probation. *See* OEC 101(4)(e) (applicability of evidence code); OEC 802 (rule proscribing hearsay). And, the right of confrontation under the Sixth Amendment to the United States Constitution does not apply to preclude hearsay testimony in a probation revocation hearing. *State v. Gonzalez*, 212 Or App 1, 5, 157 P3d 266 (2007) (Sixth Amendment does not apply because a parole revocation hearing is not a criminal proceeding).

Nonetheless, the admission of hearsay in a probation violation hearing can implicate due process under the Fourteenth Amendment. *United States v. Comito*, 177 F3d 1166, 1170 (9th Cir 1999); *see State v. Johnson*, 221 Or App 394, 404-05, 190 P3d 455, *rev den*, 345 Or 418 (2008). To

---

[3] As previously noted, after the court's evidentiary rulings at issue here, defendant testified, at the hearing, that, when he got off the MAX, "[t]hat's when I noticed, uh, [P], and, uh, walked away." Thus, defendant himself again identified P at the scene.

determine whether admission of hearsay evidence at a probation revocation hearing violates a defendant's due process right to confrontation, we have applied the Ninth Circuit's approach that considers: "(1) the importance of the evidence to the court's finding; (2) the probationer's opportunity to refute the evidence; (3) the difficulty and expense of obtaining witnesses; and (4) traditional indicia of reliability borne by the evidence." *Johnson*, 221 Or App at 401. We need not reach the due process question, however, when there actually is no hearsay at issue.

On appeal, defendant contends that the "trial court erred by permitting Budry to testify about the assertions of a woman *** that the text messages on that woman's phone came from defendant." Defendant evinces some uncertainty about what the "assertions" were. That is, he argues that "[t]he woman's *words* and *conduct* were an assertion that 'these messages are from defendant.' Even if the woman did not utter those or similar words, her act of showing the messages on the phone in this context was an assertion as to the origins of the messages." (Emphasis added.) In other words, defendant decries hearsay whether expressed as verbal or nonverbal assertions.

We first address defendant's argument that Budry's testimony included a verbal assertion by P that defendant sent the messages. As described above, Budry testified that the phone displayed a message that "appeared to be from [defendant] *** asking if he could come over." He further testified that it "appeared" that a message indicated defendant was 10 minutes away. Contrary to defendant's premise, that testimony does not recount a verbal assertion by P that the messages were sent by defendant. Further, defendant does not point to any place in the record where Budry repeated an out-of-court statement about the origin of the text messages.[4] Absent testimony from Budry that repeated a verbal statement of P, there was no *verbal* hearsay from P.

---

[4] Defendant does not develop any argument that Burdy's testimony about the apparent origin of the messages, although not a repetition of an out-of-court statement, nonetheless lacked personal knowledge or adequate foundation because it was *based* on hearsay (for instance, a statement on the phone that attributed the messages to defendant). Rather, as a passing aside in a footnote, defendant posits that, if Budry repeated defendant's name as the sender of the messages

As for any nonverbal assertion, the record is equally lacking. Budry testified that P "showed [him] her cell phone," but the record does not establish that her action constituted an "assertion," and, as a consequence, that action was not shown to be hearsay. Generally, whether a nonverbal action constitutes a statement for hearsay purposes is a question of the declarant's intent. *See* OEC 801(1)(b) (defining "statement" as including "[n]onverbal conduct of a person, if intended as an assertion"). "A person makes an assertion when that person speaks, writes, acts, or fails to act with the *intent* to convey an expression of fact or opinion." *State v. Carlson*, 311 Or 201, 207 n 7, 808 P2d 1002 (1991) (emphasis added). Legislative commentary to the Oregon Evidence Code explains,

> "Rule 801 is worded so that the opponent of the evidence has the burden of proving that the conduct was intended as an assertion. If a reasonable juror could find to the contrary, the evidence is admitted. Ambiguous and doubtful cases should be resolved in favor of admissibility."

Laird C. Kirkpatrick, *Oregon Evidence* § 801.01[2], Art VIII (6th ed 2013).

When raising an objection to a nonverbal communication, defendant had the burden to show that P's conduct was intended as an assertion. Budry, however, only testified that P showed him her phone and that he made his own observations based on what he saw. Defendant did not establish a context that makes the act of handing Budry her phone a communication, rather than a simple delivery of evidence. For example, defendant did not establish that the officers asked P if defendant contacted her, and that, in response, P nodded and pointed to her phone. *See State v. Mayfield*, 302 Or 631, 642-43, 733 P2d 438 (1987) (a child sex abuse victim's manipulation of anatomical dolls in response to questions from a caseworker constituted nonverbal hearsay of how she was abused). P's conduct, in delivering her phone to the officer, is not so indicative of a verbal assertion as to be treated as one. *See* Kirkpatrick, *Oregon Evidence*

---

on P's phone, "that is an assertion from the woman that the sender's phone number belongs to defendant." That "sender-name" issue was not preserved below or developed on appeal and we do not reach it.

§ 801.01[2], Art VIII ("Some nonverbal conduct, such as the act of pointing to identify a suspect in a lineup, is clearly the equivalent of a verbal assertion and should be regarded as a statement."). Without more, defendant has not met his burden of demonstrating P's communicative intent. As a result, Budry's testimony that she gave him her phone is not inadmissible as nonverbal hearsay.

In sum, testimony about P's out-of-court identification of herself was harmless. Further, the challenged testimony contained no verbal or nonverbal hearsay; thus, there was no due process violation. Accordingly, the trial court did not err in revoking defendant's probation.

Affirmed.