***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

Argued and submitted December 7, 2022, affirmed June 22, 2023

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

RALIN KATHALINE BOWMAN,
*Defendant-Appellant.*

Lincoln County Circuit Court
19CR63060; A175839

Thomas O. Branford, Senior Judge.

John Evans, Deputy Public Defender, argued the cause for appellant. On the brief were Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Anna Belais, Deputy Public Defender, Office of Public Defense Services.

Jordan R. Silk, Assistant Attorney General, argued the cause for respondent. On the brief were Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Eric Seepe, Assistant Attorney General.

Before Shorr, Presiding Judge, and Mooney, Judge, and Pagán, Judge.

PAGÁN, J.

Affirmed.

**PAGÁN, J.**

Defendant appeals from a judgment of conviction for one count of driving while under the influence of intoxicants (DUII), ORS 813.010 (Count 1); one count of reckless driving, ORS 811.140 (Count 2); and one count of recklessly endangering another person, ORS 163.195 (Count 3). On appeal, defendant assigns error to the trial court's admission of testimony about an officer's training in the use of a horizontal gaze nystagmus (HGN) test.[1] In her first assignment of error, defendant contends that the testimony was hearsay, and that admission of the testimony violated her right to confrontation. In her second assignment, defendant contends that the testimony was scientific, but that the state did not lay a sufficient foundation for its admission. We conclude that the challenged testimony was not hearsay. We further conclude that defendant failed to preserve the argument made in her second assignment of error. We therefore affirm.

We review a trial court's evidentiary ruling in light of the record that was before the court at the time of the ruling. *State v. Eatinger*, 298 Or App 630, 632, 448 P3d 636 (2019).

The relevant facts are not disputed. At the time of trial, Sergeant Wertz had been a patrol trooper with the Oregon State Police for over five years. He was also a drug recognition expert (DRE). At trial, Wertz testified about his background and training. He stated that he had conducted over 400 DUII investigations. He received training on how to conduct those investigations at the police academy. In addition, Wertz completed the DRE program, which he described as "the most advanced training that police officers will receive for doing drug investigations and impaired driving investigations out in the field." He also completed a course called "A-ride Advanced Roadside Impaired Driver Evaluations."

---

[1] HGN "is an involuntary, rapid oscillation of the eyes which occurs when a person looks to the side at an object, and is characterized by an involuntary pendular (back and forth) jerking movement of the eye." *State v. O'Key*, 321 Or 285, 294, 899 P2d 663 (1995) (internal quotation marks omitted).

On August 5, 2019, at around 9:40 p.m., Wertz stopped defendant on Highway 101 near Waldport for failure to maintain a lane. As Wertz approached the vehicle, he noticed that defendant had trouble putting her car in park. A male passenger was in the car with defendant. Wertz observed that defendant's speech was "a little bit slow and slurred." Wertz smelled the odor of alcohol on defendant's breath. When asked how much alcohol she drank that night, defendant stated, after a substantial pause, that she had consumed "a Mike's Hard Lemonade." Defendant later admitted consuming additional alcoholic beverages.

Defendant consented to participating in field sobriety tests. Wertz administered the HGN test. After explaining the test to the jury, Wertz testified that defendant exhibited four out of six clues of impairment on the HGN test. He testified that "she exhibited lack of smooth pursuit in both eyes and distinct and sustained nystagmus at maximum deviation in both eyes." Wertz conducted the HGN test a second time to give defendant "the benefit of the doubt." Wertz placed defendant under arrest. After she was transported to jail, defendant provided a breath sample that showed that her blood alcohol content (BAC) was 0.08.

On redirect examination, Wertz provided additional testimony about the HGN test:

"Q:   Okay. And Trooper Wertz, I've heard other officers describe it with a [HGN], that with—with alcohol on board, your eyes regress to like being a child, or being a baby. What—?

"A:   It's something that Dr. Karl Citek teaches. He's an ophthalmologist that teaches—

"[DEFENSE COUNSEL]:   Your Honor, object to testimony about Dr. Carlson and—

"[PROSECUTOR]:   Dr. Citek.

"[DEFENSE COUNSEL]:   —and lack of foundation as well.

"THE COURT:   I'm going to overrule that. We all learn *** from other people everything we know, but this is not hearsay. He's trying to explain the basis for the opinion, so it's admissible.

"[PROSECUTOR]:   Thank you, Judge.

"BY [PROSECUTOR]:

"Q:   And so just briefly when you were being trained *** as a DRE, he—Dr.—

"A:   Karl Citek, he teaches *** in the DRE school. He is *** a practicing ophthalmologist. He teaches at an ophthalmological college. The *** way that he describes the effects of alcohol on the eyes to students is that he talks about—

"[DEFENSE COUNSEL]: I'm going to object; it's hearsay.

"THE COURT:   Overruled.

"BY [PROSECUTOR]:

"A:   He talks about child development and—

"[DEFENSE COUNSEL]:   Your Honor, I'd also object to—for confrontation clause, because I can't confront Dr. Carlson, and ask him questions under the Sixth Amendment so I would object under the State and Federal Constitution confrontation clause as well.

"THE COURT:   Okay, objection's noted. It's overruled.

"BY [PROSECUTOR]:

"A:   What we were trained is that the [HGN] test is not only *** a test where we look for otherwise meaningless clues of bouncing eyes, but that *** the fact that the eyes are bouncing, and *** inhibiting a person's smooth pursuit, the fact that the eyes are bouncing at the peripheral are indicators that *** the function of the eye to deliver messages to the brain *** is diminished. It's *** not as good as a person who would be sober, and again the *** trouble with this is that a person is operating a motor vehicle. You need your eyes to be able to see what's happening on the roadway, to read signs, to steer your car appropriately within the lane, to react to anything that would be unexpected. A person with impaired vision should not be operating a vehicle.

"Q:   And so I've heard it explained, or described as *** like a *** child unable to focus, or the baby looking at—?

"A:   (Indiscernible) in—in the development of a child, a child develops their *** eyes in the first roughly nine months of child development, a *** baby is not able to move their head independent of their eyes. They have to look wherever they are—whatever they want to see they have to turn their entire head to do that. At about nine months to a year is when a child develops the ability to move their eyes independent of their head, and then they also begin to develop a more robust peripheral vision until you finally develop the *** full use of your eyes as you would as an adult with full peripheral about 120-degree field of vision, and the ability to *** move from a distance object to a near object and back and forth. Alcohol has the effect that it seems to cause a person to regress backwards in that process, so *** a person with enough alcohol on board could be said to be seeing just like a baby, or they are not able to even look at something independent of moving their head. Their eyes are moving with their head now.

"Q:   Okay. That's what I wanted to get to."

The jury found defendant guilty of the charges of DUII, reckless driving, and recklessly endangering another person. Defendant appeals.

In her first assignment of error, defendant argues that Wertz's testimony about what he learned from an ophthalmologist regarding the effects of alcohol on the eyes was inadmissible hearsay. Defendant also argues that admission of the statements violated defendant's right to confront witnesses. The state responds that there was no hearsay because Wertz did not repeat any statements made by the ophthalmologist. In addition, the state argues that OEC 703 permits experts to base their opinions on the opinions of other experts, and that defendant's right of confrontation was not violated because Wertz's testimony was not hearsay. We agree with the state that the testimony at issue was not hearsay.

We review a trial court's decision to admit testimony over a hearsay objection for legal error. *State v. Hixson*, 307 Or App 333, 335, 476 P3d 977 (2020). Similarly, we review a confrontation challenge to the admission of evidence for legal error. *State v. Townsend*, 290 Or App 919, 922, 417 P3d 571, *rev den*, 363 Or 481 (2018). OEC 801(3) defines hearsay

as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Although hearsay is generally inadmissible, *see* OEC 802, there are exceptions to that rule, *see* OEC 803, OEC 804.

Here, when Wertz was about to testify about how an ophthalmologist "describes" or "talks about" the effects of alcohol on the eyes, defendant objected. The trial court overruled the objection. However, when Wertz's testimony continued, he discussed his training in a way that did not refer to the ophthalmologist, and Wertz did not repeat any statement made by the ophthalmologist. Instead, Wertz testified more generally about what he learned in his training, and he tied it directly to the basis for his opinion about defendant's performance of the HGN test. *Cf. State v. Thomas*, 279 Or App 98, 107-09, 379 P3d 731, *rev den*, 360 Or 423 (2016) (testimony of factual details of a memory study, without tying that study to an opinion offered by the expert, was inadmissible hearsay). Absent testimony from Wertz that recounted a particular statement made by the ophthalmologist, there was no hearsay. *See State v. Jenkins*, 282 Or App 276, 281, 385 P3d 1209 (2016) (verbal hearsay requires the witness to repeat an out-of-court statement).

Further, OEC 703 provides in part that experts may rely upon information that is "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." Although "OEC 703 does not render otherwise inadmissible evidence admissible merely because it was the basis for the expert's opinion," *McCathern v. Toyota Motor Corp.*, 332 Or 59, 70, 23 P3d 320 (2001), because we have already concluded that Wertz's testimony was not hearsay, the concerns about using OEC 703 as a backdoor for inadmissible hearsay are inapt. Indeed, even if Wertz's testimony could be construed as repeating statements made by the ophthalmologist, the Supreme Court has stated that when evidence is offered "only to provide the foundation necessary to explain" an expert's opinions, and not for its truth, then it is not hearsay. *Id.*

In arguing that the testimony did implicate the concerns of misusing OEC 703 to admit otherwise inadmissible

evidence, defendant cites *State v. Knepper*, 62 Or App 623, 661 P2d 560 (1983), and *State v. Prose*, 308 Or App 167, 478 P3d 606 (2020), *rev den,* 367 Or 709 (2021). Those cases are distinguishable because, in each of them, the expert testified regarding case-specific facts that were otherwise inadmissible. In *Knepper*, 62 Or App at 625-26, the expert witness disclosed the results of the defendant's blood alcohol test even though those test results were inadmissible because they had been obtained in a manner that failed to meet statutory requirements. And in *Prose*, 308 Or App at 168, it was prejudicial error for the trial court to admit a pediatrician's testimony regarding the results of an infant's urine test "as substantive evidence of the test results over defendant's hearsay objection." Here, by contrast, Wertz's challenged testimony did not concern any facts specific to the case or about the defendant. In addition, Wertz did not repeat any out-of-court statements, but, instead, provided general information that he had learned in his DRE training. We conclude that the trial court did not err when it overruled defendant's hearsay objection.

For similar reasons, we reject defendant's claim that the challenged testimony violated defendant's right to confront witnesses. Article I, section 11, of the Oregon Constitution guarantees a criminal defendant the right "to meet the witnesses face to face." For hearsay testimony to be admissible "over a confrontation rights objection," the declarant must be unavailable, and the declarant's out-of-court statements must have adequate indicia of reliability. *State v. Belden*, 369 Or 1, 9, 499 P3d 783 (2021). However, Article I, section 11, imposes those requirements "only as to hearsay evidence." *State v. Wyant*, 300 Or App 1, 12, 452 P3d 471 (2019), *rev den*, 366 Or 451 (2020). In the instant case, Wertz's testimony was not hearsay and, as a result, there was no violation of defendant's right to confront witnesses.[2]

---

[2] On appeal, defendant does not argue that there was a violation of her federal confrontation right. Even if her argument could be construed as invoking the federal constitution, we note that the Confrontation Clause of the Sixth Amendment applies to testimonial hearsay. *Davis v. Washington*, 547 US 813, 821, 126 S Ct 2266, 165 L Ed 2d 224 (2006). Here, as already explained, there was no hearsay at all.

In defendant's second assignment of error, she argues that Wertz's challenged testimony was scientific evidence for which the state failed to lay a sufficient foundation. We conclude that defendant failed to preserve the argument.

To preserve an argument for appeal, "a party must provide the trial court with an explanation of his or her objection that is specific enough to ensure that the court can identify its alleged error with enough clarity to permit it to consider and correct the error immediately, if correction is warranted." *State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000). "Preservation also ensures fairness to an opposing party, by permitting the opposing party to respond to a contention and by otherwise not taking the opposing party by surprise." *Peeples v. Lampert*, 345 Or 209, 219, 191 P3d 637 (2008). The "touchstone" is "procedural fairness to the parties and to the trial court." *Id.* at 220.

When Wertz began to testify about what he learned from an ophthalmologist during his DRE training, defendant objected to testimony about the ophthalmologist, and she stated, "lack of foundation as well." The trial court overruled the objection, stating "[w]e all learn *** from other people everything we know, but this is not hearsay. He's trying to explain the basis for the opinion, so it's admissible." Shortly thereafter, defendant made a hearsay objection, and she also objected under the state and federal confrontation clauses. The trial court overruled the objections.

Based on that record, we conclude that defendant did not preserve her argument that Wertz's testimony was scientific evidence for which the state failed to lay a sufficient foundation. When defendant initially objected, the trial court understood defendant to be making a hearsay objection, and defendant did not follow up to clarify whether she was also objecting for the reasons she now raises on appeal. Indeed, the trial court may have understood defendant to be objecting on the ground that the state failed to lay an adequate foundation for the admission of the evidence under a hearsay exception. *See State v. Ritchie*, 251 Or App 587, 594 n 2, 284 P3d 1174 (2012), *rev den*, 353 Or 533 (2013) ("A foundation objection can encompass a range of issues.");

*see also State v. K. J. B.*, 362 Or 777, 791, 416 P3d 291 (2018) ("[A] general objection to a trial court ruling is not sufficient to preserve all possible theories for such an objection.").

In *State v. O'Key*, 321 Or 285, 297, 899 P2d 663 (1995), the Supreme Court determined that HGN test evidence is scientific evidence. Applying a multifactor test, the Supreme Court concluded that "the general proposition supporting HGN test evidence—that alcohol consumption causes nystagmus—is scientifically valid." *Id.* at 319. The Supreme Court held "that, subject to a foundational showing that the officer who administered the test was properly qualified, the test was administered properly, and the test results were recorded accurately, HGN test evidence is admissible in a DUII proceeding to establish that a defendant was under the influence of intoxicating liquor." *Id.* at 323.

Here, during Wertz's direct examination, Wertz testified that defendant exhibited clues of impairment on the HGN test, and when the prosecutor asked whether the presence of nystagmus indicated that the defendant had consumed alcohol, Wertz responded that there was "a likelihood that it's alcohol, or it could be some other * * * substance, but there's definitely evidence of impairment if you see at least four out of six clues." Citing *O'Key*, defendant objected, and she pointed out that *O'Key* was "limited to talking about the presence of alcohol in the system." The prosecutor responded that Wertz was permitted to offer an opinion that the clues were "indicative of impairment." The trial court overruled the objection.

Later, when defendant made her "lack of foundation" objection, defendant neither mentioned *O'Key*, nor did she provide the trial court with any indication that she was objecting on the ground that the state failed to lay a sufficient foundation for the admission of scientific evidence. Instead, she made a hearsay objection and objected based on her right to confront witnesses. As we explained in *Ritchie*, a generalized objection on the basis of foundation may fail to alert the trial court and the state to the alleged error that a defendant asserts on appeal. 251 Or App at 594. Defendant was clearly aware of *O'Key*, and, based on her failure to refer

to that case later, it is reasonable to infer that her "lack of foundation" objection was *not* based on a concern that the state had failed to lay a sufficient foundation for the admission of scientific evidence. Because defendant failed to preserve that argument, we decline to address the merits of defendant's second assignment of error.[3]

Affirmed.

---

[3] Defendant has not requested plain-error review. *See State v. Ardizzone*, 270 Or App 666, 673, 349 P3d 597, *rev den*, 358 Or 145 (2015) (declining to review for plain error absent a request to do so).